1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,              No. 2:06-cr-00035-MCE

12              Plaintiff,

13       v.                                MEMORANDUM AND ORDER

14  ERIC MCDAVID,

15              Defendant.

16
                              ----oo0oo----
17

18       This matter came before the Court on March 6, 2008.  Mark

19  Reichel appeared on behalf of Defendant, Eric McDavid.  Robert

20  Steven Lapham, Assistant United States Attorney, appeared on

21  behalf of the Government.  On September 27, 2007, a jury found

22  Defendant guilty of conspiracy to violate 18 U.S.C. section 844

23  (f) and (i).  Defendant now moves the Court for judgment of

24  acquittal, or in the alternative, for a new trial.

25  ///

26  ///

27  ///

28  ///

                                    1

**BACKGROUND**

Defendant was indicted on one count of conspiracy to damage or destroy property by fire and an explosive under 18 U.S.C. section 844(n).  Defendant was indicted with two other co-conspirators.  The matter was tried by a jury beginning September 10, 2007.  During the course of the trial, the Government put on evidence regarding the Earth Liberation Front ("ELF"), the Animal Liberation Front ("ALF"), and various anarchist groups.  The Government also introduced the testimony of "Anna," an undercover agent working closely with the Federal Bureau of Investigation.  Anna began working with the FBI as a college student.  As part of her work with the FBI, she attended protests in an undercover capacity.  Anna first met Defendant at the Crimethink Convergence in 2004.  She determined at that time that Defendant was interested in various forms of illegal protest activity, but otherwise appeared to be of little interest.  In 2005, Anna met with Defendant at a BioTech conference in Philadelphia.  At that point, Defendant told her he was planning something "big" in California.  At this meeting, Anna believed Defendant to be much more radical in his thinking and he began talking to her about a bombing campaign.

Anna traveled to California, where she met with Defendant and the other co-conspirators charged in the indictment, Lauren Weiner and Zachary Jenson.  At that point, Defendant and the co-conspirators began plotting a bombing campaign at various locations in Northern California as a part of their anarchist philosophy.

Anna agreed to obtain a cabin for the group to use and the FBI wired the cabin with surveillance equipment.  During their time in the cabin, the group planned to bomb gas stations, the Nimbus Dam, the Institute of Forest Genetics ("IFG"), power stations and cell phone towers.  In addition to the testimony from Anna, the Government also introduced recorded conversations, e-mails, books, and notes that corroborated her testimony. Defendant's co-conspirators, Weiner and Jensen, also testified and corroborated Anna's testimony.

Defendant put on several character witnesses who testified that Defendant was a peaceful person.  At the close of the evidence, the Court instructed the jury as to the crime charged and the defense of entrapment.  On September 27, 2007, after several questions from the jury and several supplemental instructions, the jury returned a guilty verdict.  In a special verdict, the jury found that Defendant conspired with Weiner and Jensen.

**STANDARD**

**A.    Motion for Judgment of Acquittal**

In deciding a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, the Court must decide whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find each essential element of the crime beyond a reasonable doubt.

///

///

*U.S. v. Mosley,* 465 F.3d 412, 415 (9th Cir. 2006) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *U.S. v. Johnson*, 357 F.3d 980, 984 (9th Cir. 2004) (same).  A district court's denial of a motion for acquittal is reviewed *de novo*.  *Id*. at 414-15.

**B.   Motion for New Trial**

Rule 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  A trial court's denial of a motion for new trial is reviewed for abuse of discretion.  *U.S. v. Moses*, 496 F.3d 984, 987 (9th Cir. 2007).

**ANALYSIS**

**A.   Motion for Judgment of Acquittal**

Defendant raises five issues in his Motion for Judgment of Acquittal:

***1.   Insufficient Evidence***

Defendant argues there was insufficient evidence that he actually conspired with the two co-defendants.  The parties stipulated the IFG, Nimbus Dam, and cell phone towers either received government funding or were used in interstate commerce.  Defendant argues the government did not prove any other target of the conspiracy and the co-defendants, Weiner and Jensen, testified there was no agreement as to the stipulated targets.  Therefore, the evidence was insufficient to convict Defendant under 844 (n) of conspiring to commit 844(f)(1) or (i).

4

1    In response, the Government points to recorded conversations

2 where the co-defendants and the government informant discussed

3 gas stations, cell phone towers, and the IFG.  The Government

4 also points to recorded conversations where Weiner states she is

5 "down for the Forestry Service" and where the parties discuss the

6 IFG, getting schematics for the building, and determining the

7 locations of the security cameras.  Further, the "Burn Book"

8 addressed cell phone towers and Nimbus Dam, among other targets.

9 The Government also points to evidence that the group took

10 scouting trips to the Nimbus Dam and to the IFG.

11    The Government points to more than sufficient evidence upon

12 which a rational trier of fact could find that the conspirators

13 agreed on at least one of the federal targets beyond a reasonable

14 doubt.  Jensen testified the group considered the IFG a target

15 for direct action.  There was evidence the group took a trip to

16 the IFG and drew a map of it to plot their actions.  There was

17 also evidence the group took a trip to the Nimbus Dam to scout

18 out the locations of the buildings.  Jensen testified the group

19 had discussed cell phone towers, but they had not agreed on any

20 particular tower or any particular group of towers.  Finally, the

21 evidence Defendant points to does not dissolve the conspiracy.

22 Weiner testified in her cross-examination that after visiting the

23 Nimbus Dam it was no longer a target because the group did not

24 know what the effect of bombing it would be.  This is not the

25 same as her testifying that the group never agreed on the Nimbus

26 Dam.  The conspiracy was complete, at the latest, when the

27 conspirators drove to the various targets.

28 ///

In order to withdraw from a conspiracy, the conspirator must (1) disavow the illegal objective of the conspiracy, (2) take affirmative steps to defeat the conspiracy, or (3) disassociate himself from the conspiracy. *U.S. v. Fox*, 189 F.3d 1115, 1118 (9th Cir. 1999). Defendant and his co-conspirators took none of these actions.

### 2. Variance Between Indictment and Evidence

Defendant argues the indictment was specifically for a conspiracy to destroy the Nimbus Dam, cell phone towers, and the IFG in violation of 18 U.S.C. sections 844(f) and (i). However, Defendant argues that, at trial, the Government's witnesses indicated there was no conspiracy with the co-conspirators as to these targets and the Government told the jury it need not prove these were the three targets in order to convict. Defendant argues this resulted in a conviction based on charges not contained in the indictment, and Defendant should be acquitted as a result of this fatal variance.

The Government argues its evidence was consistent with the theory set forth in the indictment. The indictment charged Defendant with conspiring to destroy the particular sites and that is what the Government proved at trial. Although evidence of discussions regarding other targets, such as dams or gas stations, was introduced, the bulk of the evidence was consistent with the targets listed in the indictment. Therefore, the Government argues there was no fatal variance.

///

///

///

An indictment may charge numerous offenses or the commission of one offense in numerous ways. *U.S. v. Miller*, 471 U.S. 130, 136 (1985). As long as the defendant is convicted of an offense listed in the indictment, the Grand Jury Clause is not violated, despite any surplusage of charges. *Id.* "A part of the indictment unnecessary to and independent of the allegations of the offense proved may normally be treated as "a useless averment" that "may be ignored." *Id.* (citing *Ford v. U.S.*, 273 U.S. 593 (1927)). A conviction for an offense other than that charged in the indictment must be reversed if the variance between the indictment and the proof affects the substantial rights of the parties. *U.S. v. Friedman*, 593 F.2d 109, 116 (9th Cir. 1979). A material variance exists if a set of facts materially different from those alleged in the indictment is presented at trial, and if that variance affects the defendant's "substantial rights." *U.S. v. Adamson*, 291 F.3d 606, 615-16 (9th Cir. 2002); *U.S. v. Bhagat*, 436 F.3d 1140, 1146 (9th Cir. 2006).

Defendant relies upon *United States v. Choy* for the proposition that even a minor variance in the Government's theory can constitute a fatal variance in violation of the Grand Jury Clause of the Fifth Amendment. 309 F.3d 602 (9th Cir. 2002). In *Choy*, the defendant was charged with bribing a public official by giving him two checks for a total of $5000 to be used for purchasing computer equipment. *Id*. at 605. At trial, the government's theory was that the defendant gave the checks to a third party to purchase the computer equipment, which indirectly conferred a benefit on the public official. *Id*.

///

The Ninth Circuit held this was a fatal variance because the defendant was indicted for bribing a public official according to the statutory language of the offense, and the theory at trial was too attenuated to meet the elements of the statute. *Id.* at 606. Further, the Ninth Circuit made clear that a conspiracy conviction may stand even if the evidence for the underlying charge is insufficient. *Id.*

The evidence at trial showed Defendant conspired to destroy the sites listed in the indictment. There were recorded conversations regarding these sites, and reconnaissance missions to the sites. In *Choy*, the government changed its theory to the extent it failed to meet the elements of the statute. *Id.* In the present case, the government put forth evidence consistent with the indictment, and the jury found beyond a reasonable doubt Defendant did conspire to destroy those listed sites. There was no fatal variance between the indictment and the charges or theory presented at trial.

### 3. *Evidence of "Explosive Device"*

Defendant argues the jury was not presented with any evidence of an "explosive device" or "fire" as defined in 18 U.S.C. section 844. Although the jury was not instructed on this definition, Defendant contends there was insufficient evidence in the record to meet this definition.

In response, the Government argues because Defendant was charged with conspiracy to commit arson, and not with arson itself, the Government did not need to prove Defendant was in possession of an incendiary device.

///

The Government points to the conversations between Defendant and his fellow conspirators regarding explosives and explosions.

The evidence of "Molotov cocktails" and the "Poor Man's James Bond" is sufficient for a rational trier of fact to conclude the Defendant intended to use an "explosive device" as that term is defined under 18 U.S.C. § 844.

> The term "explosive" means gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuzes (other than electric circuit breakers), detonators, and other detonating agents, smokeless powders, other explosive or incendiary devices within the meaning of paragraph (5) of section 232 of this title, and any chemical compounds, mechanical mixture, or device that contains any oxidizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof may cause an explosion.

18 U.S.C. § 844(j).  It is clear from the recorded conversations the conspirators intended to cause explosions and they were concerned regarding the loss of life that might accompany those explosions.  It is also clear they wanted to make a bomb.  The fact they were unsuccessful and had an incorrect recipe is not dispositive in a conspiracy case.  There was sufficient evidence upon which the jury could find Defendant guilty beyond a reasonable doubt.

### 4.   Entrapment as a Matter of Law

Defendant argues he was entrapped as a matter of law, and therefore, was entitled to a dismissal of the charges against him.  Defendant argues the evidence showed he was not predisposed to commit the offense and he was induced by the government. Defendant argues he lacked the "wherewithal" to commit the offense and therefore could not have been predisposed.

The Government argues there was substantial evidence establishing Defendant's predisposition to commit the offense and the lack of inducement on the part of the government.  The government refutes the case Defendant relies upon, *U.S. v. Poehlman*, 217 F.3d 692 (9th Cir. 2000).  The facts of *Poehlman* are very similar to those of *U.S. v. Jacobson*, which was argued and analyzed in an early hearing before this Court in the present case.

"Generally, whether a defendant was entrapped is a question for the jury." *U.S. v. Jones*, 231 F.3d 508, 516 (9th Cir. 2000). To establish entrapment as a matter of law, the defendant must point to undisputed evidence making it patently clear that an otherwise innocent person was induced to commit the illegal act by trickery, persuasion, or fraud of a government agent. *U.S. v. Hsieh Hui Mei Chen*, 754 F.2d 817, 821 (9th Cir. 1985), *cert. denied*, 471 U.S. 1139 (1985); see *Sherman v. U.S.*, 356 U.S. 369, 373-76 (1958); *U.S. v. Smith*, 802 F.2d 1119, 1125 (9th Cir. 1986).  To succeed on an entrapment as a matter of law defense, the defendant must persuade the court that "viewing the evidence in the light most favorable to the government, no reasonable jury could have found in favor of the government as to inducement or lack of predisposition." *Poehlman*, 217 F.3d at 698.

At trial, this case presented disputed facts and evidence about conversations, romantic interests, sources of ideas, and agreements.  This case also involved disputed evidence as to Defendant's level of commitment to the conspiracy.  The various factual disputes alone establish Defendant was not entrapped as a matter of law.

10

1  Further, the jury found Defendant was not entrapped because the
2  jury found he was predisposed to commit the act or it found the
3  government did not induce him.   In either event, the jury's
4  finding supports the argument Defendant was not entrapped as a
5  matter of law.

6      ***5.    Lack of Agreement***

7      Defendant argues there was no agreement for the purposes of
8  a conspiracy because the co-conspirators testified they were
9  "acting" when they interacted with McDavid at the times of
10 importance.   Defendant argues since the act of agreeing is a
11 group act, when one person pretends to agree there is no actual
12 agreement and therefore no conspiracy.   However, the case
13 Defendant relies on discusses whether a defendant can conspire
14 solely with a government agent for the purpose of giving a *Sears*
15 instruction.   *U.S. v. Escobar de Bright*, 742 F. 2d 1196, 1198-99
16 (9th Cir. 1984).

17     In response, the Government contends an agreement may be
18 inferred from circumstantial evidence and to the extent the co-
19 conspirators testified they were "acting" the jury did not find
20 that testimony credible or it would not have convicted Defendant.

21     Defendant's argument does not warrant a judgment of
22 acquittal.   A rational trier of fact could find an agreement
23 beyond a reasonable doubt.   The evidence showed recorded
24 conversations between Defendant and his co-conspirators regarding
25 their plans to bomb the various targets of the conspiracy.   The
26 parties to the conspiracy took notes in the "Burn Book" and
27 Jenson and Weiner went so far as to help Defendant purchase the
28 materials and attempt to make a bomb.

Although the Defendant asserts the co-conspirators testified they were acting, a rational trier of fact could find the co-conspirators had an agreement.

### B.   Motion for New Trial

Defendant raises seventeen issues in his Motion for New Trial:

#### 1.   *Testimony from Officer Naliboff*

Defendant argues the government witness, Officer Naliboff, was not qualified as an expert, and therefore should not have been allowed to testify. Naliboff's testimony addressed ELF, ALF, and anarchist groups, explaining what the groups believe, and what activities group members have been known to partake in to support their causes.

The Government argues this was admissible testimony that was linked to subsequent evidence regarding Defendants' plans to follow ELF/ALF guidelines. In addition to denying this was expert testimony, the Government does not concede this was even lay opinion testimony. Naliboff was never asked, and never gave, an opinion as to whether the conspirators were members of any group. The testimony was used to assist the jury in understanding Defendant's motive for targeting the particular locations.

Federal Rule of Evidence 701 provides for lay opinion testimony. In *U.S. v. VonWillie*, an agent testified "as a lay witness about the nexus between drug trafficking and the possession of weapons." 59 F.3d 922, 929 (9th Cir. 1995).

12

1  Specifically, he testified in his experience with the Drug

2  Enforcement Bureau, (1) it was common for drug traffickers to

3  possess and use weapons in order to protect their drugs and to

4  intimidate buyers; (2) the MK-11, one of the guns found in the

5  defendant's bedroom, was a particularly intimidating gun and he

6  knew of drug dealers who used that specific weapon; and (3) drug

7  traffickers commonly kept a weapon near their drugs.  *Id*.  The

8  court concluded "these observations are common enough and require

9  such a limited amount of expertise, if any, that they can,

10  indeed, be deemed lay witness opinion."  *Id.*

11      Federal Rule of Evidence 702 provides for scientific,

12  technical, or other specialized testimony given by a witness

13  qualified as an expert by knowledge, skill, experience, training,

14  or education.  A district court's rulings on the admissibility of

15  expert testimony are reviewed for an abuse of discretion.  *See*

16  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  Such

17  rulings will be reversed only if "manifestly erroneous."  *General*

18  *Elec. Co. v. Joiner*, 522 U.S. 136, 141-142 (1997); *U.S. v.*

19  *Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000).

20      In *Hankey*, the Ninth Circuit affirmed the district court's

21  decision to allow testimony of a gang expert for the purpose of

22  explaining the gang's beliefs and actions, and to give context to

23  the behavior of the defendant and witnesses.  203 F.3d at 1167.

24  The court held the *Daubert* factors need not all be met, and the

25  officers' training, experience, knowledge, education, and skill

26  were sufficient to qualify him as an expert.  *Id.*

27  ///

28  ///

The court noted when expertise is based on specialized knowledge, the requirements for expert qualification should be applied more liberally.  *Id*.

In the present case, Naliboff had been in law enforcement for more than 26 years.  He had become familiar with ALF, ELF, and anarchist groups during the course of his career and keeps himself current on issues relating to those groups.  He did not give opinion testimony about Defendant or his conduct.  He did not testify Defendant was a member of ELF or ALF, but rather explained ELF, ALF, and anarchist groups' methods and motives in order to provide the jury with a context to better understand other evidence relating to motive.  Naliboff had sufficient experience and did not give any specific opinion testimony.  It was within the Court's discretion to allow him as a witness.  Although the Government did not qualify Naliboff as an expert witness, as in *VonWillie*, his testimony was such that it was admissible as a lay opinion.  Naliboff's testimony related to ALF, ELF, and anarchist groups generally, he did not give an opinion that McDavid was a member of any of these groups.

### 2.   *404(b) Evidence*

Defendant argues 404(b) evidence was improperly admitted.  The evidence he points to includes: Defendant's connection to Ryan Lewis, Lewis was an ELF fire bomber and a friend of Defendant's; Defendant attended CrimeThink in 2004; Defendant spoke of Molotov cocktails; Defendant spoke of killing police officers, informants, innocent bystanders and fence sitters; and Defendant spoke of reading Ted Kaczynski; among other unspecified errors.

14

Defendant argues this evidence was admissible only under 404(b) to show Defendant's propensity and bad character and the Government specifically stated it would not be putting forth any 404(b) evidence.

The Government first asserts this evidence is not subject to 404(b).  In the alternative, the Government argues the evidence was admissible under 404(b).

The evidence Defendant points to is not character evidence subject to 404(b).  The evidence regarding Defendant speaking of Molotov cocktails; killing police officers, informants, innocent bystanders and fence sitters; and reading Kaczynski was all admissible as a party admission under Federal Rule of Evidence 801.

### 3.    403 Evidence

Defendant argues that, upon objection under Rule 403, the Court is required to weigh the factors on the record.  Defendant argues the Court overruled the objection without weighing the factors "on numerous instances."  The Government asserts the Court is not required to consider nebulous, unspecified errors.

Defendant does not point to specific instances where the Court failed to weigh the factors on the record.  Further, the case Defendant cites in support of his position, *Doe v. Glanzer*, 232 F.3d 1258 (9th Cir. 2000), only requires a Court do a 403 balancing on the record when the Court is doing so in the context of Rule 415 evidence of similar acts in civil cases concerning sexual assault and child molestation.

///

///

1   Further, the Ninth Circuit has held a district court need not

2   state explicitly it is applying a 403 balancing, but the record

3   need only show a balancing occurred.  *U.S. v. Milner*, 962 F.2d

4   908, 912 (9th Cir. 1992).  The Eighth Circuit has held that

5   failing to make a record of a 403 balancing is not reversible

6   error and that the district court's ruling on the objections

7   established presumptively the court had weighed the evidence

8   pursuant to Rule 403.  *Smith v. Tenet Healthsystem SL, Inc.*, 436

9   F.3d 879, 885 (8th Cir. 2006).

10      ***4.    Failure to Provide Discovery on Informant***

11      Defendant argues the Government failed to provide discovery

12  on "Anna," specifically referring to agreements between Anna and

13  the FBI and to the 240-question psychological assessment that

14  Anna completed regarding Defendant.  Defendant argues he

15  requested all written documents regarding himself numerous times,

16  and was told no other documents existed.  At trial, Anna

17  testified about these documents and Defendant did not receive

18  them until after the close of the Government's case-in-chief.

19      The Government argues all of the discovery the Government

20  was in possession of was properly turned over to Defendant.  The

21  agreements were admonitions regarding attorney general guidelines

22  and not actual written agreements between Anna and the FBI.  The

23  guidelines were all properly disclosed.  The Government was not

24  aware of the questionnaire until Anna testified about it, and the

25  Government turned it over as soon as it received it.  Defendant

26  was not prejudiced by this late piece of discovery, which was

27  demonstrated by Defendant's failure to request a continuance or

28  raise an objection.

1    A conviction will only be reversed because of a discovery
2 violation if the district court abused its discretion and the
3 defendant's substantial rights were prejudiced.  *U.S. v.*
4 *Basinger*, 60 F.3d 1400, 1407 (9th Cir. 1995).  The prejudice that
5 must be shown in order for the court to grant a reversal is that
6 the verdict would have been different had the violation not
7 occurred.  *U.S. v. Baker*, 10 F.3d 1374, 1398 (9th Cir. 1993).

8    Defendant has not established that as a result of the
9 violation, he suffered prejudice to his substantial rights.  The
10 nature of the evidence, especially in light of the rest of the
11 evidence at trial, suggests the violation was harmless and does
12 not entitle Defendant to a new trial.  The Government was not
13 privy to the psychological assessment form, and did provide it to
14 Defendant as soon as it possessed it.  Regarding the agreements,
15 Defendant has not referred to any agreements other than those the
16 Government asserts were merely guidelines, not agreements, and
17 these were turned over during the discovery period.

18         *5.   Government Reopening to Admit Evidence*

19    Defendant argues the Court improperly allowed the Government
20 to reopen its case to admit exhibits over Defendant's objections,
21 and a new trial should be granted.  The Government argues for all
22 intents and purposes, this evidence was admitted during its case-
23 in-chief.  One piece had been admitted, and it was only a
24 clerical error that caused the Government to believe it failed to
25 admit the exhibit.  The other piece of evidence was a CD of
26 recorded conversations that had been played for the jury and had
27 been referenced numerous times.
28 ///

17

The CD itself was not actually received as an exhibit, and the Government did not learn this until after it completed its case-in-chief.  After all the excerpts were played, defense counsel asked if all the CDs of recordings were going to be admitted and the Government responded that all the excerpts were on one disk and it would be admitted.  Defendant did not object when the excerpts were played.

The reopening of a criminal case after the close of evidence lies within the sound discretion of the court.  *U.S. v. Ramirez*, 608 F.2d 1261, 1267 (9th Cir. 1979).  The Government notes although the Ninth Circuit has not articulated particular factors for deciding to reopen a criminal case, other circuits have.  In *United States v. Cohen*, 888 F.2d 770, 775 (11th Cir. 1989), and *United States v. Dossey*, 558 F.2d 1336, 1339 (8th Cir. 1977), the courts listed the following factors: (1) whether the evidence surprised the defendant, (2) whether the defendant was given adequate opportunity to meet the proof, and (3) whether the evidence was more detrimental to the defendant because of the order in which it was introduced.

Defendant does not argue he suffered any prejudice, surprise, or detriment as a result of the Court's decision to allow the Government to reopen its case to admit the exhibits.  Additionally, it appears these exhibits were either already admitted or heavily used during the trial and inadvertently omitted.  Therefore, Defendant was well aware of them, and the jury had already heard or seen them.  It was not an abuse of discretion to allow the Government to reopen its case to remedy these ministerial errors.

**6.    Renewed Motion Based on Outrageous Government Conduct**

Defendant argues the pretrial motion to dismiss due to outrageous government conduct should have been granted, and since it was not, a new trial should be granted.  According to Defendant, the installation and use of video and audio surveillance constituted outrageous conduct, and the jurors' post-trial statements to counsel and the press evidence that. The Government submits the matter on the prior briefing and arguments on this issue, and asserts nothing new was developed at trial on the matter.

The Fifth Amendment requires dismissal of an indictment for government misconduct "only where the government's conduct is so grossly shocking and so outrageous as to violate the universal sense of justice." *U.S. v. Citro*, 842 F.2d 1149, 1152 (9th Cir. 1988).  A motion to dismiss based on outrageous conduct is a question of law that is reviewed de novo.  *Id.*  This defense is similar to entrapment, but is a much higher standard requiring the government's conduct to "be malum in se or amount to engineering and direction of the criminal enterprise from beginning to end."  *Id.* at 1153.

In *Citro*, the Ninth Circuit refused to dismiss the indictment, even though the government provided counterfeit credit cards and raised the idea of a counterfeit credit card scheme.  *Id.*  The court held, "[t]he government simply attempted to 'attach itself to an on-going...operation for the purpose of closing it down and prosecuting the operators.'" *Id.* (quoting *Greene v. U.S.*, 454 F.2d 373 (9th Cir. 1971)).

///

1    In the present case, because this Court has already found

2  Defendant cannot meet the heightened standard of entrapment as a

3  matter of law, Defendant cannot meet his burden of proving

4  outrageous government conduct.  This case is analogous to *Citro*

5  where the government attached itself to an ongoing plan, and

6  created an opportunity for the offense to be committed.  The use

7  of surveillance equipment does not make this outrageous conduct

8  and does not warrant a new trial.

9         **7.   *Restriction on Character Evidence***

10    Defendant argues the Court's restricting character evidence

11  testimony to any time prior to June 2005 was prejudicial error.

12  Because the proof of predisposition must be for the time period

13  prior to government contact, Defendant argues not allowing him to

14  admit evidence of his character prior to June 2005 is prejudicial

15  error.

16    In response, the Government argues that evidence of

17  Defendant's character to prove entrapment must be related to and

18  proximate in time to the government's inducement.  Defendant

19  called three witnesses - his sister, his best friend, and his

20  best friend's wife - to testify as to character trait for non-

21  violence.  The government asserts the time limitation was not

22  prejudicial error.

23    Evidence of a defendant's good character is admissible to

24  show lack of predisposition so long as it "'bears meaningfully on

25  the defendant's lack of a criminal disposition at the time of the

26  government's inducement.'"  *U.S. v. Thomas*, 134 F.3d 975, 979

27  (9th Cir. 1998) (citing *U.S. v. Barry*, 814 F.2d 1400, 1403 n. 6

28  (9th Cir. 1987)).

20

*Thomas*, and the cases discussed therein, dealt with trials where all of the defendant's good character evidence was excluded.  The court found because predisposition is an essential element of entrapment, it was error for the trial court to exclude all evidence of a defendant's lack of a criminal record.  *Id*. at 980. That is not the situation presented in this case.  At Defendant's trial, the Court admitted the testimony of his sister, his best friend, and his best friend's wife as to his good character. However, the Court excluded evidence that was remote in time. Therefore, the appropriate analysis is under Federal Rule of Evidence 403 and reviewed for an abuse of discretion.  Defendant has not asserted any particularized prejudice and therefore a new trial is not warranted.

### 8.   *Failure to Instruct on Lesser Included Offense*

Defendant argues the jury should have been instructed on a lesser included offense since the lesser offense was identified within the charged offense and a rational jury could have found Defendant guilty of the lesser offense and not the greater.

The Government argues the lesser offense Defendant requested at trial was 18 U.S.C. section 371, which is conspiracy to commit an offense against the United States.  Defendant was charged with 18 U.S.C. section 844(n), (f), and (i), to wit, conspiring to destroy, by fire or explosives, property owned or leased by the United States, and/or property used in interstate commerce.  In order for the jury to find Defendant guilty of section 371, they would have to find he conspired to commit an offense against the United States.

///

The only offense against the United States alleged in the indictment was conspiracy to destroy, by fire or explosives, government property.  If the jury did not find Defendant conspired to destroy government property, it could not find he conspired to commit an offense against the United States because there was no other offense alleged.  Thus, the Government argues that, in this instance the charged offense and the proposed lesser included offense were identical and therefore instructing on the lesser offense would have been improper.

A defendant is entitled to an instruction on a lesser-included offense if: (1) a lesser included offense is identified within the charged offense; and (2) a rational jury could find the defendant guilty of the lesser-included offense but not guilty of the greater.  *U.S. v. Johnson*, 637 F.2d 1224, 1233-34 (9th Cir. 1980); Fed.R.Crim.P. 31(c).  In a case where some of the elements of the crime charged themselves constitute a lesser crime, the defendant, if the evidence justifies it, is entitled to an instruction which would permit a finding of guilt of the lesser offense.  *Sansome v. U.S.*, 380 U.S. 343, 350 (1965) (quotations and citations omitted).  It is not proper to instruct on a lesser-included offense where the factual issues the jury must resolve are the same as to both the lesser and greater offenses.  *Id.*  The lesser offense cannot be completely encompassed by the greater offense.  *Id.*  There must be a disputed factual element which is not required for a conviction of the lesser-included offense.  *Id.*

///

///

1    In the present case, an instruction on a lesser included

2    offense would not have been proper because, based on the language

3    of each section, the jury could have only concluded Defendant

4    violated both sections 371 and 844, or he violated neither.  The

5    indictment only alleged a conspiracy to destroy federal property

6    by fire or explosives.  If the jury found Defendant did not

7    conspire to commit this particular offense, then there would have

8    been no other possible object of the conspiracy upon which the

9    jury could convict under section 371.  The factual issues the

10   jury needed to resolve were the same for the proposed lesser

11   offense and the charged greater offense and failure to instruct

12   on the lesser offense does not warrant a new trial.

13       *9.   Failure to Instruct on "Wherewithal"*

14   Defendant argues the Court should have instructed the jury

15   that "predisposition is the defendant's willingness to commit the

16   offense prior to being contacted by government agents, coupled

17   with the wherewithal to do so."  Defendant argues *Poehlman*

18   requires this instruction.

19   The Government argues in response a defendant is not

20   entrapped simply because he could not have committed the crime

21   without government assistance.  Further, the Defendant's reliance

22   upon *Poehlman* is misplaced because that case did not address a

23   situation where the defendant did not have the means to commit

24   the crime.

25   *Poehlman* is the only case this Court finds using the term

26   "wherewithal" as an element of predisposition.  Further, *Poehlman*

27   does not suggest a defendant is entitled to an instruction that

28   predisposition requires the wherewithal to commit the crime.

23

Rather, the case *Poehlman* relies on for the proposition discussed predisposition in the following terms: "A public official is in a position to take bribes; a drug addict to deal drugs; a gun dealer to engage in illegal gun sales. For these and other traditional targets of stings all that must be shown to establish predisposition and thus defeat the defense of entrapment is willingness to violate the law without extraordinary inducements; *ability can be presumed.*" *U.S. v. Hollingsworth*, 27 F.3d 1196, 1200 (7th Cir. 1994)(emphasis added).

There is no case law that supports Defendant's position. The Comment to Ninth Circuit Model Rule 6.2 outlines five factors relating to predisposition (discussed below). Wherewithal to commit the crime is not included in these factors. Moreover, the Government accurately cites case law that the inability to commit the crime without the government's assistance is not a defense. *U.S. v. Thickstun*, 110 F.3d 1394, 1396 (9th Cir. 1997). The Court's omission of one sentence provided in only one case is not error sufficient to support a new trial.

### 10. Mistaken Written Answer to Jury Question

The jury submitted a note asking "Was Anna a government agent in Aug. 04? If not, when did she become one?" In open court, the Court instructed that the answer to this question was "Yes." The jurors continued deliberating while the Court prepared a written response. The written response erroneously indicated that the answer to this question was "No."

///

///

///

24

Because the jurors indicated after the verdict to counsel and the media their verdict was a product of the Court's instructions, Defendant argues this erroneous written response requires a new trial.  The Government argues any error committed was harmless.

Looking at the timing of these facts and the conscientiousness and frequency with which this jury asked questions of the Court, it cannot be said the jury mistook the written answer after the Court had orally advised the jury Anna was a government agent in August of 2004.  Therefore, any error was harmless.

### 11.  Instruction on "Predisposition"

Defendant requested, prior to closing argument, the jury be instructed on the definition of "predisposition."  The Court denied that request.  The jury then submitted a note asking "What does predisposition mean?"  In response, the Court gave the Government's proposed instruction.  Defendant requested a clarifying instruction indicating the government bore the burden of proving Defendant was predisposed to commit the crime prior to first being approached by the government agents.  Defendant argues the failure to give this clarifying instruction requires a new trial.  The Government responds the instruction given fairly and accurately states the law and a defendant is not entitled to any particular form of an instruction.

No error exists here and therefore no basis for a new trial.  The instruction given fairly and accurately states the law.  Further, as to Defendant's request regarding the clarifying instruction, the initial instruction to which this jury question relates stated:

"The government has the burden of proving beyond a reasonable doubt that the defendant was not entrapped.  The government must prove the following: 1. the defendant was predisposed to commit the crime *before being contacted by government agents*..."  See Docket #271, Instruction #18 (emphasis added).  The Court had already given the instruction Defendant now claims it omitted. The proper instruction was given and  therefore no error occurred.

### 12.   Instruction on "Inducement"

Defendant argues it was error not to instruct the jury on the meaning of the word inducement.  The instruction Defendant requested stated: "Even very subtle governmental pressure, if skillfully applied, can amount to inducement. For example, the inducement may consist of repeated requests, made in an atmosphere of comradery; as well the inducement may consist of nothing more than giving the defendant the idea of committing the crime, coupled with the means to do it."  Defendant argues it was error not to so instruct.

The Government counters that the jury was properly instructed on inducement, the jury did not request definition of the term, and the Court is not required to define common terms. Further, the Government argues that, based on the verdict, the jury did not need to determine whether Defendant was induced because the jury found he was predisposed.

///

///

///

///

So long as the instruction given adequately covers the defense, the defendant is not entitled to any particular form of instruction he requests. *U.S. v. Slaughter*, 891 F.2d 691, 699 (9th Cir. 1989) (finding defendant not entitled to instruction defining inducement where concept was adequately incorporated into entrapment instruction).  The entrapment instruction given read as follows:

> The government has the burden of proving beyond a reasonable doubt that the defendant was not entrapped. The government must prove the following:
> 1. the defendant was predisposed to commit the crime before being contacted by government agents, or
> 2. the defendant was not induced by the government agents to commit the crime.
> Where a person, independent of and before government contact, is predisposed to commit the crime, it is not entrapment if government agents merely provide an opportunity to commit the crime.

This instruction, and particularly the last paragraph, adequately incorporated the concept of inducement into the instruction. Defendant was not entitled to his argumentative proposed instruction.

### 13. Definition of "Contact"

Defendant disputes the Court's instruction on "contact." The jury asked, "What does contact mean?"  After oral argument on the issue, the Court instructed the jury, "Contact as used in the instruction is the time that you determine was the first time that there was some communication between the defendant and a government agent about the crime charged in the indictment."

///

///

///

///

27

1    Defendant argues that under *Poehlman*, entrapment is viewed
2  from the time period before the defendant has any contact with
3  government agents.  The Defendant argues the reference to "the
4  crime charged in the indictment" is error because the government
5  contacted Defendant in regards to illegal protest activity in
6  2004 but did not contact him in regards to the fire-bombing
7  campaign until 2005.

8    In response, the Government points to the Comment to Ninth
9  Circuit Model Rule 6.2.  The Comment points to five factors
10 relating to "contact": "In determining whether the defendant was
11 predisposed to commit the crime before being approached by
12 government agents you may consider the following: 1) the
13 defendant's character and reputation; 2) whether the government
14 initially suggested criminal activity; 3) whether the defendant
15 engaged in activity for profit; 4) the nature of the government's
16 inducement; and 5) any other factors related to predisposition."
17 Because these factors relate to "the crime," and not to criminal
18 activity generally, the Government argues the instruction given
19 was consistent with the principles of the comment and therefore
20 proper.

21   This is an issue of first impression.  The Court finds no
22 case law on point with McDavid's case, namely, where a defendant
23 had fleeting contact with a government agent and was deemed
24 inconsequential at that time, but who later became a person of
25 interest to the government by making statements that he was
26 indicating a predisposition.

27 ///

28 ///

1    The Court agrees the language of *Jacobson* is clear, "Where

2    the Government has induced an individual to break the law and the

3    defense of entrapment is at issue, as it was in this case, the

4    prosecution must prove beyond reasonable doubt that the defendant

5    was disposed to commit the criminal act prior to first being

6    approached by Government agents."   503 U.S. 540, 548-49 (1992).

7    In *Jacobson*, the defendant was the target of a mail campaign

8    seeking to induce him into purchasing child pornography.   The

9    government's campaign lasted more than two years before the

10   defendant purchased the pornography.   As to predisposition, the

11   Court said, "although he had become predisposed to break the law

12   by May 1987, it is our view that the Government did not prove

13   that this predisposition was independent and not the product of

14   the attention that the Government had directed at petitioner

15   since January 1985."   *Id.* at 550.

16   The distinction between Defendant's case and *Jacobson* is

17   that *Jacobson* involved a continuous string of inducement on the

18   government's part, whereas Defendant's case involved an initial

19   meeting that the government did not act upon, and a later contact

20   upon which it did.   Therefore, in *Jacobson* the government needed

21   to prove the defendant was predisposed prior to that entire

22   string of government conduct.   Here, however, the government did

23   not engage in a continuous string of inducement.   Rather, the

24   government had an isolated, initial contact with Defendant, and

25   deemed him inconsequential.   It was not until sometime later,

26   when Defendant began talking about his plans, that the government

27   began focusing its efforts on Defendant and the others affiliated

28   with him.

1    Defendant cites to Ninth Circuit case law: "[T]he relevant
2 time frame for assessing a defendant's disposition comes *before*
3 he has *any* contact with government agents, which is doubtless why
4 it's called predisposition." *Poehlman*, 217 F.3d at 703 (emphasis
5 added).  Following the plain language of *Poehlman* would have
6 required the Court to instruct the jury that contact occurred in
7 2004.  However, the facts of *Poehlman*, and other cases quoting
8 the same language, do not gel with the facts presented here.  Had
9 the Ninth Circuit considered the facts of this case, this Court
10 believes it would have phrased that sentence differently.  In
11 this case, defining contact from the first time Defendant came
12 into contact with Anna would have resulted in an overzealous
13 application of the entrapment defense.  A literal application of
14 *Poehlman* was not logical in this case.

15    The Court notes the difficulty in applying the entrapment
16 defense to a case where conspiracy is the only count charged in
17 the indictment.  All the cases reviewed by this Court involved
18 crimes such as drug sales, child pornography sales, or crossing
19 state lines for the purpose of engaging in sex acts with a minor
20 - situations where the crime was complete after the commission of
21 some physical act.  In each of these cases, the government
22 initiated the contact and the contact related only to the crime
23 charged in the indictment.  In those cases, it makes sense to
24 evaluate predisposition prior to any contact with the government.
25 The facts of this case did not warrant a blanket instruction to
26 be cut and pasted from distinguishable cases.

27 ///

28 ///

30

The fact that in this case the Government's initial contact related to unlawful protest activity, and the later contact related to the crime charged in the indictment - conspiracy to commit arson - required a more sensitive approach to the issue of predisposition.  The instruction given was proper.  The instruction Defendant proposed would turn the use of undercover officers and informants on its head and would significantly hinder the Government's ability to prevent crimes such as the one Defendant was convicted of in this case.

### 14.  *Allowing Government to Reopen after Rule 29 Motion*

Defendant argues it was an abuse of discretion for the Court to allow the Government to reopen its case to admit exhibits after Defendant made a Rule 29 motion for acquittal.  Defendant argues the prejudice was manifest and the Government should not have been allowed to reopen its case.

A district court is afforded wide discretion in determining whether to allow the government to reopen its case in order to introduce evidence.  *U.S. v. Woodring*, 444 F.2d 749, 751 (9th Cir. 1971).  One purpose of Rule 29 motions is to alert the court to omitted proof so that, if it so chooses, it can allow the government to submit additional evidence.  *U.S. v. Tisor*, 96 F.3d 370, 380 (9th Cir. 1996).  Rule 29(a) provides in relevant part that "[t]he court on motion of a defendant ... shall order the entry of judgment of acquittal ... after the evidence on either side is closed if the evidence is insufficient to sustain a conviction" of the offense charged.

///

///

31

1    Defendant relies upon a Tenth Circuit opinion, *U.S. v.*

2  *Hinderman*, 625 F.2d 994, 996 (10th Cir. 1980).  However, in that

3  case, the Tenth Circuit held that the standard for allowing the

4  government to reopen its case to introduce evidence remains the

5  same even if the defendant makes a Rule 29 motion for acquittal.

6  *Id.* at 996.  The court went on to note, "the trial court must be

7  vested with discretion to permit reopening when mere inadvertence

8  or some other compelling circumstance ... justifies a reopening

9  and no substantial prejudice will occur."  *Id.*

10    The analysis above as to Defendant's other argument

11  regarding allowing the Government to reopen applies equally to

12  this argument.

13        ***15.  Answering Jury Question Without Consulting Attorneys***

14    The jury submitted a question asking "what does contact

15  mean?"  The Court, after consultation with counsel, returned the

16  answer, "Contact as used in the instructions is the time that you

17  determine was the first time that there was some communication

18  between the defendant and a government agent about the crime

19  charged in the indictment."  After reading this instruction in

20  open court, Juror Two asked: "The timeframe, when does the

21  evidence start?  June 2005 or prior to that?"  Juror Twelve

22  asked: "In the entrapment portion, do we consider entrapment from

23  June of '05 or back to August of '04?"  The Court advised the

24  jurors that the instruction they had just received on "contact"

25  would answer that question and reread the instruction.  Defense

26  counsel requested a sidebar which the Court denied.

27  ///

28  ///

Defendant now argues the Court's refusal to allow defense counsel to be heard on this issue violated Defendant's constitutional right to due process because it permitted the jury to draw an inference from isolated facts.  The Government points out that the Court merely referred the jury back to a prior instruction and instructed the jury to apply the formula to the facts, rather than applying it for the jury.

The juror asked a question about "contact."  The Court had just given the jury an instruction on that very issue.  The Court merely pointed the jury back to that instruction.  The juror's question essentially asked the Court to instruct it on an ultimate issue.  The Court's refusal to do so was proper under the circumstances and the Defendant suffered no harm as a result.

### 16. *Government Shifted Burden in Closing*

Defendant argues the Government improperly shifted the burden of proof during its closing argument by referring to defense counsel's failure to produce tape recordings that show Defendant was entrapped.  Defendant argues this was a reference to Defendant's failure to testify, and therefore violated his Fifth Amendment rights.  Defendant also argues the Government's reference to defense counsel's failure to produce tapes was improper because defense counsel only had the tapes the Government provided.

The Government argues it only pointed out that defense counsel had all the recordings and if there actually were conversations establishing entrapment, defense counsel would have presented them.

///

The Government also argues it properly turned over all of the recordings, and it did not "cherry pick" conversations that made it appear Defendant was more committed to the conspiracy than he actually was.

In *Griffin v. California*, 380 U.S. 609, 615 (1965), the Supreme Court held that the self-incrimination clause of the Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."  A comment on the defense's failure to present exculpatory evidence is distinct from a comment on the defendant's failure to testify.  *U.S. v. Mende*, 43 F.3d 1298, 1301 (9th Cir. 1995).  "A prosecutor may properly comment upon the defendant's failure to present exculpatory evidence, as long as it is not phrased to call attention to defendant's own failure to testify."  *U.S. v. Lopez-Alvarez*, 970 F.2d 583, 595-96 (9th Cir. 1992) (quoting *U.S. v. Bagley*, 772 F.2d 482, 494-95 (9th Cir. 1985)).

In the present case, the Government's comments in its closing argument did not violate Defendant's Fifth Amendment rights.  Defense counsel maintained the theory of entrapment throughout the case, and did fail to produce tape recordings of conversations that would support that theory, despite intimating such evidence existed.  The Government referred to defense counsel's failure to produce evidence, and not to Defendant's failure to testify.  These statements were permissible and do not warrant a new trial.

///

///

34

### 17.   *Totality of Errors Requires New Trial*

Defendant argues that the totality of the above-described errors warrants a new trial.  Because no prejudicial error occurred, this argument fails.


**CONCLUSION**


For the foregoing reasons, Defendant's Motion for Judgment of Acquittal is DENIED and Defendant's Motion for New Trial is also DENIED.

IT IS SO ORDERED.

Dated: March 27, 2008

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE