BENJAMIN B. WAGNER
United States Attorney
ANDRÉ M. ESPINOSA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for the
United States of America

FILED
JAN -8 2015
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 06-CR-0035-MCE |
|---|---|
| Plaintiff, | PLEA AGREEMENT |
| v. | DATE: JANUARY 8, 2015 |
| ERIC MCDAVID, | TIME: 9:00 A.M. |
|  | COURT: Hon. Morrison C. England, Jr. |
| Defendant. | |

I. **INTRODUCTION**

A. **Scope of Agreement.**

The single-count Superseding Information in this case charges the defendant with a violation of 18 U.S.C. § 371 – Conspiracy ("Count One"). This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This Plea Agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

B. **Court Not a Party.**

The Court is not a party to this Plea Agreement. Sentencing is a matter solely within the

US v. McDavid, 06-CR-0035-MCE                1
PLEA AGREEMENT

discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities which may not have been charged in the Superseding Information. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this Plea Agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this Plea Agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II. DEFENDANT'S OBLIGATIONS

### A. Guilty Plea.

The defendant will plead guilty to Count One of the Superseding Information, charging a violation of 18 U.S.C. § 371 – Conspiracy. The defendant agrees that he is in fact guilty of that charge and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this Plea Agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw his plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the Factual Basis for Plea, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

1. Waiver of Indictment:

The defendant acknowledges that under the United States Constitution he is entitled to be indicted by a grand jury on the charge to which he is pleading guilty and that pursuant to Fed. R. Crim.

P. 7(b) he agrees to waive any and all rights he has to being prosecuted by way of indictment to the charges set forth in the Superseding Information. The defendant agrees that at a time set by the Court, he will sign a written waiver of prosecution by indictment and consent to proceed by Superseding Information rather than by indictment.

    2.  Waiver of Statute of Limitations:

In consideration of the promises exchanged between the parties in this Agreement, by execution of this Agreement the defendant knowingly, intelligently, and voluntarily agrees to and does waive, to the fullest extent permissible under law, the right to assert any affirmative defense to the charges in the original Indictment, filed on January 25, 2006, and the Superseding Information to be filed in connection with this Agreement, under 18 U.S.C. § 3282 or any other applicable statute of limitations. The defendant agrees to waive such a defense until January 9, 2017, or until entry of a Judgment and Commitment by the Court, pursuant to this Agreement, whichever is sooner. However, the defendant further agrees that if he ever attempts to vacate his plea, dismiss the underlying charges, or modify or set aside his sentence on the count to which he is pleading guilty, his waiver of the statute of limitations in this Agreement shall extend through such proceedings and until final judgment is entered after trial, or otherwise, on the offense charged in the original Indictment, filed on January 25, 2006, and the Superseding Information to be filed in connection with this Agreement.

**B.** **Restitution.**

The defendant agrees to pay restitution pursuant to 18 U.S.C. § 3663(a)(3) for the full losses suffered by the victims of the offense to which the defendant is pleading guilty, if any, as ordered by the Court. Restitution payments shall be by cashier's or certified check made payable to the Clerk of the Court. However, the parties jointly agree that no restitution is owed in this matter and the parties do not recommend imposition of any restitution.

**C.** **Fine.**

Defendant agrees to pay a fine as imposed by the Court. However, the parties jointly agree that the defendant in unable to pay a fine and the parties do not recommend imposition of a fine.

### D. Special Assessment.

The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this Plea Agreement is voidable at the option of the government if he fails to pay the assessment. If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary, by participating in the Inmate Financial Responsibility Program, or by other means.

### E. Violation of Plea Agreement by Defendant/Withdrawal of Plea.

If the defendant violates this Plea Agreement in any way, withdraws his plea, or tries to withdraw his plea, this Plea Agreement is voidable at the option of the government. The government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. The determination whether the defendant has violated the Plea Agreement will be under a probable cause standard.

If the defendant violates the Plea Agreement, withdraws his plea, or tries to withdraw his plea, the government shall have the right to: (1) prosecute the defendant on any of the counts to which he pleaded guilty; (2) reinstate any counts, including counts in the original Indictment filed on January 25, 2006, that may be dismissed or vacated pursuant to this Plea Agreement or the Final Settlement Agreement concerning the Judgment and Commitment entered by the Court on May 19, 2008 and the defendant's pending §2255 claims (the "Final Settlement Agreement")[1]; and (3) file any new charges that would otherwise be barred by this Plea Agreement or the Final Settlement Agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge, including perjury, false statements, and obstruction of justice. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this Plea Agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision. Any prosecutions that are not

---

[1] The parties agree that the Final Settlement Agreement is incorporated into this Agreement as though set forth in its entirety.

time-barred by the applicable statute of limitations as of the date of this Plea Agreement, and as modified by paragraphs II.A.2 of this Agreement, may be commenced in accordance with this Agreement, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this Plea Agreement, and as modified by paragraphs II.A.2 of this Agreement.

In addition, all statements made by the defendant, whether before or after this Plea Agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this Plea Agreement, or any leads derived therefrom, should be suppressed. By signing this Plea Agreement, the defendant waives any and all rights in the foregoing respects.

### III. THE GOVERNMENT'S OBLIGATIONS

#### A. Recommendation of Acceptance of Final Settlement Agreement.

The government agrees that, after the Court imposes sentence on the charge to which the defendant is pleading guilty pursuant to this Agreement, the government will recommend that the Court accept, file, and order the relief recommended by the parties in the Final Settlement Agreement. The government further agrees not to reinstate any dismissed count, except if this Agreement is voided, as provided in paragraphs II.E (Violation of Plea Agreement by Defendant/Withdrawal of Plea), VI.B (Guidelines Calculations), and VII.B (Waiver of Appeal and Collateral Attack) herein.

The government acknowledges and the parties agree that their object in this Plea Agreement and the Final Settlement Agreement is to effect a complete resolution of all civil and criminal claims between the parties arising out of the defendant's conduct and the investigation and prosecution of that conduct. Therefore, it is the goal and expectation of the parties that the Court will accept this Plea

Agreement and the defendant's guilty plea pursuant to its terms only if the Court also agrees to accept, file, and grant the relief recommended by the parties in the Final Settlement Agreement. The parties agree that if the defendant should enter a guilty plea pursuant to this Plea Agreement and, thereafter, the Court were to reject the terms of the Final Settlement Agreement, the government will agree to consent to the defendant's motion to withdraw that guilty plea.

**B.   Recommendations.**

   1.   Incarceration Range.

The government will recommend that the Court sentence the defendant to time already served as of the date the Court imposes sentence pursuant to this Agreement. Additionally, the government and the defendant will jointly recommend that the Court impose a two-year period of Supervised Release.

   2.   Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of his offense level if the defendant clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant not engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, during the plea and sentencing proceedings.

**C.   Use of Information for Sentencing.**

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

### IV.   ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty, Count One of the Superseding Information, charging a violation of 18 U.S.C. § 371 – Conspiracy:

    1. That beginning in or about August 2005, and ending on or about January 13, 2006, there was an agreement between two or more persons to commit at least one of the crimes as charged in the Superseding Information – namely, arson in violation of 18 U.S.C. § 844(f) and (i);

    2. The defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

    3. One the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

Additionally, if the defendant contends that he was entrapped by a government agent. The government would have to prove beyond a reasonable doubt that the defendant was not entrapped by proving either:

    1. The defendant was predisposed to commit the crime before being contacted by government agents, or

    2. The defendant was not induced by the government agents to commit the crime.

The defendant fully understands the nature and elements of the crimes charged in the Superseding Information to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V. MAXIMUM SENTENCE

### A. Maximum Penalty.

The maximum sentence that the Court can impose is 5 years of incarceration, a fine of $250,000, a 3-year period of supervised release and a special assessment of $100. By signing this Plea Agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific count(s) to which he is pleading guilty. The defendant further agrees, as noted above, that he will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court. However, the government represents that no restitution is owed by the defendant related to the charged offense and does not recommend that the Court impose restitution.

### B. Violations of Supervised Release.

The defendant understands that if he violates a condition of supervised release at any time during

the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to 2 additional years imprisonment.

## VI. SENTENCING DETERMINATION

### A. Statutory Authority.

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

### B. Stipulations Affecting Guideline Calculation.

The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

1. **Base Offense Level**: The base offense level applicable to the charge to which the defendant is pleading guilty in Count One of the Superseding Information is: **24**. See U.S.S.G. § 2X1.1(a) and § 2K1.4(a)(1).

2. **Specific Offense Characteristics**:

   a. Three levels are subtracted (**-3**) because the offense conduct was not completed or complete but for the interruption of law enforcement agents. Id. at (b)(2);

3. **Preliminary Adjusted Offense Level: 21.**

4. **Acceptance of Responsibility**: Three levels will be subtracted (**-3**) if the conditions set forth in this Agreement are satisfied. See U.S.S.G. § 3E1.1; paragraph III.B.2 above.

5. **Victim-Related Adjustment**: The offense level is increased to **32** because the offense was a felony that involved, or was intended to promote, a federal crime of terrorism. U.S.S.G. § 3A1.4. In the previous sentencing proceedings in this case, the defendant contested the application of this adjustment, and the Court ruled that this Guidelines adjustment applies. For purposes of this plea agreement and these sentencing proceedings, the defendant accepts and does not contest that ruling and the application of this adjustment.

6. **Criminal History**: By operation of U.S.S.G. § 3A1.4, the defendant's criminal history category is **VI**. As noted immediately above, in the previous sentencing proceedings in this case, the defendant objected to this, and the Court ruled that the adjustment under U.S.S.G. § 3A1.4 applies, resulting in a criminal history category of **VI**. The defendant accepts and does not contest the Court's ruling and its impact on the computation of the criminal history category in connection with this plea and sentencing.

7. **Applicable Sentencing Range**: In light of the above, the parties anticipate that the guideline sentencing range in this case will be **210 to 262 months.**

8. **Departures or Other Enhancements or Reductions**: The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), cross-references, or departure from the Sentencing Guidelines not already set forth in this Agreement.

The defendant and the government agree to jointly recommend that the Court sentence the defendant to time already served as of the date the Court imposes sentence pursuant to this Agreement. Additionally, the defendant and the government will jointly recommend that the Court impose a two-year period of Supervised Release with standard terms and conditions.

## VII. WAIVERS

### A. Waiver of Constitutional Rights.

The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be compelled to incriminate himself.

### B. Waiver of Appeal and Collateral Attack.

The defendant understands that the law gives the defendant a right to appeal his guilty plea, conviction, and sentence. However, as part of his Plea Agreement the defendant agrees to give up and waive to the fullest extent permitted under law his right to appeal, the guilty plea, conviction, and the sentence imposed in this case. The defendant also specifically gives up the right to appeal any order of restitution the Court may impose. The defendant understands and acknowledges that this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the agreement in paragraph III.A above that the government will, at the time of sentencing pursuant to this Agreement, recommend that the Court accept, file, and order the relief recommended by the parties in the Final Settlement Agreement, if the defendant ever attempts to vacate his plea, dismiss the underlying charges, or modify or set aside his sentence on the count to which he is pleading guilty, the government shall have the rights set forth in paragraph II.E of this Agreement.

### C. Waiver of Attorneys' Fees and Costs.

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this Plea Agreement and any

1  charges previously dismissed).

## VIII.  ENTIRE PLEA AGREEMENT

Other than this Plea Agreement and the Final Settlement Agreement presented to the Court in connection with this Plea Agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## IX. APPROVALS AND SIGNATURES

### A. Defense Counsel.

I have read this Plea Agreement and have discussed it fully with my client, including all possible defenses my client might have asserted in this case. The Plea Agreement and the Final Settlement Agreement accurately and completely set forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this Plea Agreement.

Dated: January 7, 2015

MARK R. VERMEULEN
BEN ROSENFELD
Attorneys for Defendant

By: _____
MARK R. VERMEULEN

### B. Defendant:

I have read this Plea Agreement and the Final Settlement Agreement and carefully reviewed every part of them with my attorney. I understand them, and I voluntarily agree to them. Further, I have consulted with my attorneys and I fully understand all possible defenses I might have asserted in this case and my rights, including my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and the Final Settlement Agreement. In addition, no one has threatened or forced me in any way to enter into this Plea Agreement or accept the terms of the Final Settlement Agreement. Finally, I am satisfied with the representation of my attorneys in this case.

Dated: January 7, 2015

_____
ERIC MCDAVID
Defendant

### C. Attorney for United States:

I accept and agree to this Plea Agreement on behalf of the government.

Dated: January 7, 2015

BENJAMIN B. WAGNER
United States Attorney

_____
ANDRE M. ESPINOSA
Assistant United States Attorney

EXHIBIT "A"

Factual Basis for Plea

In August 2005, defendant Eric McDavid ("McDavid") met with Lauren Weiner ("Weiner") and Zachary Jenson ("Jenson") in a Philadelphia, Pennsylvania, coffee shop. At this meeting McDavid, Weiner, and Jenson discussed different ideas for protest and activism. Among the ideas they discussed was the idea of using explosives to destroy commercial and/or government property. McDavid told the group that he wanted to make "boom," which Weiner understood as McDavid expressing his desire to make and use homemade explosives. During the meeting, each person agreed to research other possible targets. Shortly after the meeting, Weiner told a confidential FBI source known as "Anna" about the discussion, including the idea of using explosives. After the meeting, Weiner also researched books containing explosives recipes.

On the weekend of November 18-20, 2005, McDavid met with Weiner, Jenson, and Anna at McDavid's parents' residence in Foresthill, California, while McDavid's parents were out of town. There, the group further discussed committing acts of property destruction. During the meeting McDavid, Weiner, and Jenson knew that their meeting was for the purpose of planning criminal acts. McDavid warned the group that the discussion in which they were engaged was itself a criminal act. The group agreed to reassemble in early January 2006, at a remotely situated residence in Northern California secured by Anna, to manufacture homemade explosives for possible detonation at various commercial and government targets.

From January 8-13, 2006, McDavid maintained temporary residence at a cabin in Dutch Flat, California. In this span of time, he discussed with Weiner, Jenson, and Anna, plans to construct homemade explosive and incendiary devices and to target commercial and government facilities with these destructive devices, and discussed claiming credit for those acts.

On January 10, 2006, McDavid traveled with Weiner, Jenson, and Anna to the United States Forest Service Institute of Forest Genetics ("IFG") in Placerville, California. There, McDavid participated in a reconnaissance operation, the purpose of which was to determine the site's potential as a target. To hide his identity, he provided a fake name to an IFG employee the group encountered. On

US v. McDavid, 06-CR-0035-MCE         A-1
Factual Basis for Plea

January 11, 2006, McDavid assisted in purchasing several items to be used in making destructive devices from a fake explosives recipe provided by Anna, which McDavid had earlier requested and believed to be a viable explosive recipe, including: canning jars, coffee filters, mixing bowl, hot plate, petroleum jelly, a gasoline can, bleach, extension cord, and battery testers. On January 12, 2006, McDavid assisted in the initial stages of manufacturing homemade explosives. On January 13, 2006, McDavid was arrested after purchasing additional items to be used in making destructive devices, including respiratory masks and a mixing bowl.

I have read and carefully reviewed the Factual Basis for Plea with my attorneys. I agree that as it concerns my conduct it is correct. I also agree that if this matter proceeded to trial, the United States could establish each of the facts contained within the Factual Basis for Plea beyond a reasonable doubt, and that those facts satisfy the elements of the offense to which I am pleading guilty.

Dated: January 7, 2015.

ERIC MCDAVID
Defendant